1  G. GEOFFREY ROBB (131515)
   JOSHUA A. SOUTHWICK (246296)
2  GIBSON ROBB & LINDH LLP
   100 First Street, 27th Floor
3  San Francisco, California  94105
   Telephone:  (415) 348-6000
4  Facsimile:   (415) 348-6001

5

6  Attorneys for Defendant
   PACIFIC ASIAN ENTERPRISES, INC.

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 | MARKEL AMERICAN INSURANCE ) | Case No. 07-CV-5749 SC
   | COMPANY, ) |
12 |   ) | **REPLY BRIEF OF PACIFIC ASIAN
   | Plaintiffs, ) | ENTERPRISES IN SUPPORT OF ITS
13 |   ) | MOTION TO DISMISS FOR FAILURE
   | v. ) | TO STATE A CLAIM**
14 |   ) |
   | PACIFIC ASIAN ENTERPRISES, INC., a ) |
15 | California corporation; LEVITON ) | Date:  March 7, 2008
   | MANUFATURING CO., INC., a Delaware ) | Time:  10:00 a.m.
16 | corporation; HUBBELL INCORPORATED, ) | Place: Courtroom 1
   | a Connecticut corporation; and DOES 1 - ) | Judge: Hon. Samuel Conti
17 | 100, inclusive ) |
   |   ) |
18 |    Defendants. ) |
   |   ) |
19

20  **I.    Plaintiff's Opposition Admits that Its Complaint for Strict Products Liability
           and Negligence Fails as A Matter of Law.**
21

22      Plaintiff Markel American Insurance Company's ("MARKEL") opposition does not

23  challenge Pacific Asian Enterprises' ("PAE") primary contention – that a vessel manufacturer

24  may not be held liable under either strict liability or negligence theories for damage to a vessel

25  itself.  See East River S.S. Corp. V. Transamerica Delaval, 476 U.S. 871 (1986).  Instead,

26  MARKEL attempts to circumvent the holding of East River by asking the Court to construe its

27  complaint as alleging damage to "other property" not covered by the East River rule.  However,

28  MARKEL's own pleadings and motion papers confirm that its complaint is predicated on

1  damage to the *Boundless Grace*.

2  MARKEL's opposition points out that "the complaint . . . alleges that the **vessel** was
3  severely damaged including damages to finishes, furnishings and personal property." Opposition
4  at 2: 18-19 (emphasis added).   In other words, the opposition itself recognizes that the strict
5  liability and negligence claims are for damage to the vessel.   Indeed, paragraph 12 of
6  MARKEL's complaint alleges that the "*Boundless Grace* was severely damaged in an engine
7  room fire, including, but not limited to heat, smoke, and water damage to its machinery space,
8  generator, engine and mechanical systems, cabin, wheelhouse, electrical system, fuel system,
9  plumbing system, insulation, fittings, finishes, furnishings, and appliances, as well as personal
10 property." Complaint at ¶ 12.  As with the Opposition, the complaint is consistent in alleging
11 damage to the vessel *Boundless Grace* for which plaintiff cannot recover from PAE in tort.
12 Complaint at ¶¶ 12, 13, 21, 31.

13 Even did plaintiff's Complaint not consistently allege damage to the vessel itself as the
14 basis for the lawsuit, the arguments raised by its opposition would be groundless.  In Saratoga
15 Fishing Company v. J.M Martinac & Company and Marco Seattle, Inc., 520 U.S. 875 (1997),
16 Justice Breyer, writing for the Court, concluded that equipment added to a vessel post-
17 manufacture by an initial purchaser could constitute "other property" for the purposes of the East
18 River rule.  Here, however, the complaint alleges damage to the *Boundless Grace*.  While
19 MARKEL's opposition cites to the furnishings or finishes as examples of "other property," the
20 Complaint itself does not allege that MARKEL's insured added any of the furnishings or finishes
21 to the *Boundless Grace* after it was sold, or that they were not part and parcel of the vessel as
22 purchased.  Instead, the complaint alleges that PAE is strictly liable for the damage to the
23 *Boundless Grace* itself, including damage to its finishes and furnishings, among other things.

24 Moreover, plaintiff is subrogating against PAE on the basis of payments it made to its
25 insured, the purchaser of the vessel.  Complaint at ¶ 14.  MARKEL alleges that (1) it  issued the
26 "Jackline" policy covering the *Boundless Grace* and (2) that as a result of the fire damage to the
27 *Boundless Grace* it was obligated to pay its insured for the "protection, repair, and loss of use of
28 the vessel . . ." Complaint at ¶¶ 9, 13.  As a subrogated insurer, MARKEL's damages flow from

1  its obligation to pay its insured per the terms of its policy.  The policy, as alleged in the
2  complaint, covers the *Boundless Grace*, and the payments MARKEL alleges it made arise out of
3  damage to the vessel.   To the extent that MARKEL is asserting that the tort causes of action
4  apply only to property *other than the vessel*, it appears that it has no subrogation claim under the
5  terms of the policy it chose to plead in its complaint.
6        As a vessel manufacturer alleged to be in privity of contract with MARKEL's insured,
7  PAE does not stand in the same position as alleged component manufacturers such as defendants
8  HUBBELL and LEVITON.  PAE's relationship with MARKEL's insured is contractual in
9  nature, and MARKEL cannot state a cause of action in tort against PAE for damage to the
10 product itself, namely the *Boundless Grace*.  To the extent that MARKEL intends its tort
11 causes of action against PAE to apply only to after-market property aboard the
12 *Boundless Grace*, it should be required to amend its complaint to so state, and to allege
13 that it was required by the terms of its insurance policy to pay for damage to such
14 property.

15 **II.    MARKEL's Boilerplate Warranty Allegations Against All Defendants Are Insufficient to State a Claim for Breach of Warranty.**
16

17       Plaintiff's complaint for breach of warranty alleges identical boiler-plate warranty
18 allegations against each of the three named defendants.  It does not (1) distinguish
19 between the defendants' respective  products, (2) distinguish between the defendants'
20 alleged warranty allegations, (3) identify the source of any of the alleged warranties, or
21 (4) allege with specificity any facts concerning the making of the warranty or the nature
22 of the breach.   As such, the plaintiff's complaint fails to state a cause of action with
23 sufficient particularity to survive a motion to dismiss.  See McGlinchy v. Shell Chem.
24 Co., 845 F.2d 802, 810 (9th Cir. 1988)("conclusory allegations without more are
25 insufficient to defeat a motion to dismiss for failure to state a claim); Bell Atl. Corp. v.
26 Twombly, 127 S. Ct. 1955, 1965 (U.S. 2007)( "a plaintiff's obligation to provide the
27 grounds of his entitle[ment] to relief requires more than labels and conclusions, and a
28 formulaic recitation of the elements of a cause of action will not do . . .")

1   MARKEL's opposition cites no case law or other authority in support of its
2   contention that the rote allegations of its complaint alleging breach of warranty are
3   sufficient to survive a motion to dismiss. Instead, MARKEL questions whether counsel
4   for PAE have read paragraphs 23 through 26 of its complaint. Those paragraphs allege
5   identical ambiguous conduct by every defendant, allege legal conclusions ("defective"
6   and "dangerous") concerning the unnamed "products," and finally allege proximate cause
7   and injury in an amount just sufficient to invoke the diversity jurisdiction of this Court.
8   They are, in fact, precisely the "conclusory allegations" and "formulaic recitation of the
9   elements of a cause of action" cautioned against in the aforementioned case law. As
10  such, MARKEL's complaint should be dismissed. In the event MARKEL is granted
11  leave to amend, PAE requests the Court order MARKEL to identify the particular source
12  and language of the warranty it alleges PAE made to its insured.

13  **III.   Conclusion.**

14  MARKEL alleges a contractual relationship between its insured and PAE. Its
15  complaint then alleges three causes of action, two of which sound in tort rather than
16  contract, and the third of which refuses to specify the contractual source and nature of the
17  warranty it claims was made by PAE to its insured. As a subrogated insurer, MARKEL is
18  bound to the contractual position of its insured. Its artful attempt to avoid the contract it
19  alleges its insured made with PAE for the sale of the vessel should not withstand a motion
20  to dismiss. To the extent that MARKEL's insured and PAE contracted for the sale of the
21  *Boundless Grace*, their respective rights and obligations are governed by that contract.
22  PAE should not have to defend against claims for damage to the vessel that fall outside
23  the terms of the agreement between itself and MARKEL's insured. PAE respectively
24  requests this Court to dismiss MARKEL's claims against PAE.

25  Dated: February 21, 2008                    GIBSON ROBB & LINDH LLP
26
27                                              By:  S/ JOSHUA A. SOUTHWICK
                                                     Joshua A. Southwick, Esq.
28                                                   Attorneys for Defendant
                                                PACIFIC ASIAN ENTERPRISES, INC.