UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC ASIAN ENTERPRISES, INC., a California Corporation; LEVITON MANUFACTURING CO., INC., a Delaware Corporation; HUBBELL INCORPORATED, a Connecticut Corporation; and DOES 1-100, inclusive,<br><br>　　　　　Defendants. | No. C-07-5749 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS |

## I. INTRODUCTION

Plaintiff Markel American Insurance Co. ("Markel") brought this suit seeking to recover for damages resulting from a fire aboard the vessel Boundless Grace in November 2005. Markel alleges that Defendant Pacific Asian Enterprises ("PAE") manufactured the vessel, incorporating parts manufactured by Defendant Hubbell Inc. ("Hubbell"), and asserts claims against PAE, Hubbell, and Defendant Leviton Manufacturing Co. ("Leviton") for strict liability, breach of warranty, and negligence. See Compl., Docket No. 1.

Before the Court are two motions. First, Hubbell moves to dismiss on the grounds that venue is not proper in this district and that Markel has failed to state a claim for which relief can

1   be granted. Docket No. 9 ("Venue Mot."). Markel filed an
2   Opposition and Hubbell filed a Reply. Docket Nos. 15 ("Venue
3   Opp'n"), 18 ("Venue Reply"). Second, PAE moves to dismiss on the
4   grounds that Markel has failed to state a claim upon which relief
5   may be granted because binding precedent precludes tort claims
6   against vessel manufacturers for damage solely to the vessel
7   itself. Docket No. 11 ("Tort Mot."). Markel filed an Opposition
8   and PAE filed a Reply. Docket Nos. 20 ("Tort Opp'n"), 23 ("Tort
9   Reply"). For the reasons set forth below, the Court hereby GRANTS
10  IN PART and DENIES IN PART Hubbell's motion, and GRANTS IN PART
11  and DENIES IN PART PAE'S motion.

**II.  BACKGROUND**

Markel is an insurance company. At the times relevant to this dispute, Markel issued to its insured, Ron Montague ("Montague"), an insurance policy called the Jackline Policy, number JL0000045-2, for the policy period from September 19, 2005 to September 19, 2006, to cover the vessel named Boundless Grace, hull number PAI470111003 (the "Vessel"). Compl. ¶ 9. Montague purchased the Vessel from PAE in January 2004 in Florida. Id. ¶ 11. Markel alleges that the Vessel was manufactured, distributed, and sold by PAE, and incorporated work, materials, and products of Leviton and Hubbell. Id. ¶ 10. Specifically, Markel alleges that Leviton and Hubbell designed, manufactured, assembled, distributed, and sold electrical components supplied to PAE for use and installation on the Vessel. Id. ¶ 17.

In November 2005, the Vessel was severely damaged by a fire

2

1  in its engine room. Id. ¶ 12. This included heat, fire, smoke,
2  and water damage to the machinery space, generator, engine, and
3  mechanical systems, cabin, wheelhouse, electrical system, fuel
4  system, plumbing system, insulation, fittings, finishes,
5  furnishings and appliances, as well as personal property. Id. In
6  addition to damage to the Vessel, dock fees, emergency repair and
7  clean up costs were incurred to protect the Vessel.

8  Markel alleges that at the time Montague purchased the Vessel
9  from PAE, the Vessel and certain components thereof were
10 defective, deficient, and/or otherwise not fit for the purpose
11 intended. Id. ¶ 11. Markel alleges that the damage the Vessel
12 suffered in the fire was a "direct, foreseeable and proximate
13 result of the defects, deficiencies and poor workmanship of the
14 work, materials and products of defendants . . . ." Id. ¶ 12. As
15 a result of the fire, Markel was obligated to pay substantial sums
16 to or on behalf of Montague for the protection, repair, and loss
17 of use of the Vessel. Id. ¶ 13. Markel has complied in full with
18 the conditions of the insurance policy, and has therefore become
19 subrogated to Montague's rights to recover damages resulting from
20 the damage to the Vessel. Id. ¶ 14. Based on these allegations,
21 Markel asserts claims for strict liability, breach of warranty,
22 and negligence.

23 Markel asserts that venue is proper in this district because
24 all Defendants are deemed to reside here. Id. ¶ 2. Markel is a
25 Virginia corporation with its principal place of business in
26 Wisconsin. Id. ¶ 3. PAE is a California corporation with its
27 principal place of business in California. Id. ¶ 4. Leviton is a

3

1  Delaware corporation with its principal place of business in New
2  York. Id. ¶ 5. Hubbell is a Connecticut corporation with its
3  principal place of business in Connecticut. Id. ¶ 6. According
4  to Markel, all three named Defendants conduct business within the
5  Northern District of California. Id. ¶¶ 4-6.

## III. VENUE

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(3) provides that the Court may dismiss a claim for improper venue. "Once venue is challenged, the burden is on the plaintiff to show that venue is proper." Whiteman v. Grand Wailea Resort, No. 98-4442, 1999 U.S. Dist. LEXIS 3594, at *3 (N.D. Cal. Mar. 17, 1999) (citing Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)). "When there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to each defendant and as to each claim." Multimin USA, Inc. v. Walco Int'l, Inc., No. 06-0226, 2006 U.S. Dist. LEXIS 33624, at *5 (E.D. Cal. Apr. 11, 2006).

### B. Discussion

Markel has satisfied its burden with respect to venue. This is a diversity action brought under 28 U.S.C. § 1332. Neither Hubbell nor PAE contested jurisdiction in its moving papers. Thus, venue is governed by 28 U.S.C. § 1391(a), which provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be

> brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Hubbell argues that § 1391(a)(1) is not applicable because two of the Defendants do not reside in California. Venue Mot. at 3. Hubbell argues that § 1391(a)(3) is only applicable where neither § 1391(a)(1) nor § 1391(a)(2) is applicable, but that Markel has not alleged sufficient facts to determine whether § 1391(a)(2) applies. Id. at 3-4. Hubbell therefore concludes that venue is improper here.

Hubbell is incorrect because PAE, Leviton, and Hubbell all reside in this district. Section 1391(c) provides that, "For purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). All three named Defendants are alleged to conduct business in this district, and none has challenged the Court's jurisdiction. Hubbell and PAE, each having brought a Rule 12 motion without challenging personal jurisdiction, have waived that defense. See Fed. R. Civ. P. 12(b)(2), 12(g)(2), 12(h)(1)(a). As each of the Defendants is subject to personal jurisdiction in this district, each is considered to reside here for the purposes of venue. 28 U.S.C. § 1291(c). Venue is

5

1 therefore proper under 28 U.S.C. § 1291(a)(1), and Hubbell's
2 motion to dismiss for improper venue is DENIED.
3 　　In its Reply brief, Hubbell contends that "the lack of any
4 substantive information about the incident underlying this suit
5 makes it impossible for Hubbell to evaluate whether the Northern
6 District of California is the proper venue in which to litigate
7 this matter," and that "Hubbell cannot determine whether to move
8 to transfer this suit to a more appropriate venue." Venue Reply
9 at 1. Whether this district is the <u>most</u> appropriate venue to
10 litigate this dispute is not the question Hubbell put before the
11 Court in its motion, however. Hubbell moved to dismiss because
12 venue was improper. <u>See</u> Venue Mot. By contrast, a party seeking
13 to transfer venue must establish that venue is proper in this
14 district before the Court will consider transfer. <u>See</u>, <u>e.g.</u>,
15 <u>Foster v. Nationwide Mut. Ins. Co.</u>, No. 07-4928, 2007 U.S. Dist.
16 LEXIS 95240, at *4 (N.D. Cal. Dec. 14, 2007). Hubbell provides no
17 authority supporting its apparent position, articulated only on
18 Reply, that Markel must amend the Complaint to provide additional
19 facts necessary for Hubbell to decide whether or not to move for a
20 transfer. If in the course of this litigation, Hubbell becomes
21 aware of facts supporting transfer, such as the convenience of the
22 witnesses or ease of access to the evidence, it may bring an
23 appropriate motion at that time.

**IV.　RULE 12(b)(6)**
　　**A.　Legal Standard**
　　A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss

6

1 tests the sufficiency of the complaint.  Dismissal pursuant to
2 Rule 12(b)(6) is appropriate if the plaintiff is unable to
3 articulate "enough facts to state a claim to relief that is
4 plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.
5 1955, 1974 (2007).  When evaluating a motion to dismiss, the court
6 accepts the facts as stated by the nonmoving party and draws all
7 reasonable inferences in its favor.  See Everest & Jennings, Inc.
8 v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).
9 Furthermore, the court must assume that all general allegations
10 "embrace whatever specific facts might be necessary to support
11 them."  Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521
12 (9th Cir. 1994).

**B.  Discussion**

1.  Viability of Markel's Tort Claims

PAE argues that Markel's strict liability and negligence claims are precluded by the rule set forth in East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858 (1986).  The Court in East River held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." Id. at 871. Where a product injures itself, the remedy is more aptly found in contract law and warranties than in tort:

> But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain -- traditionally the core concern of

7

1      contract law.
2 Id. at 870.  In short, the Court held, "whether stated in
3 negligence or strict liability, no products-liability claim lies
4 in admiralty when the only injury claimed is economic loss."  Id.
5 at 876 (upholding summary judgment in favor of turbine
6 manufacturer in tort suit).
7      In the Complaint, Markel seeks to recover through its tort
8 claims what it paid to Montague under the insurance policy for
9 damage to the Vessel.  See Compl. ¶¶ 12 ("the Boundless Grace was
10 severely damaged"), 13 ("As a direct and proximate result of the
11 fire and the damage caused to the Boundless Grace, plaintiff was
12 obligated to pay substantial sums"), 21 ("plaintiff's insured
13 suffered substantial injury and damage to the Boundless Grace and
14 plaintiff has been damaged by reason of its obligation to pay"),
15 31 ("plaintiff has been harmed due to the fire which damaged the
16 vessel of its insured").  According to PAE, the strict liability
17 and negligence claims seek only to recover for damage to the
18 Vessel, and are therefore barred by East River.
19      Even under East River, however, a vessel owner can recover in
20 tort for damage caused by the defective vessel to "other
21 property," which includes equipment or personal property added to
22 the vessel after the manufacturer put the vessel into the stream
23 of commerce.  See Saratoga Fishing Co. v. J.M. Martinac & Co., 520
24 U.S. 875, 879-881 (1997).  Relying on Saratoga Fishing, Markel
25 argues that, "[a]t paragraph 13 of the complaint, plaintiff
26 alleges that the vessel was severely damaged including damages to
27 finishes, furnishings and personal property.  Such property

8

clearly includes 'other property' subject to strict liability and other tort recovery." Tort Opp'n at 2.

The Court agrees with Markel to an extent. The Complaint lists numerous parts of the Vessel which were allegedly damaged in the fire and for which Markel compensated Montague under the insurance policy. If these various pieces of equipment were on the Vessel when Montague purchased it from PAE, they are part of the Vessel, and therefore outside the reach of tort liability. Similarly, Markel alleges that in addition to the damage to the Vessel, there was damage to personal property. PAE argues that this would not be covered by the insurance policy that, as pled, covered only the Vessel, so Markel would have no basis for recovery. The precise terms of the insurance policy are not before the Court, however. Drawing reasonable inferences on Markel's behalf, as the Court must, the Court finds that Markel has pled valid claims to recover in tort for damage to property other than the Vessel itself. The Court therefore DENIES PAE's motion to dismiss the tort claims under East River.

The scope of the tort claims is limited, however. As pled in the Complaint, Markel's strict liability and tort claims include the damage to the Vessel. See Compl. ¶¶ 13, 14, 31. Tort recovery for damage to the Vessel itself is clearly precluded under East River and Saratoga Fishing. Defendants may later show that the property in question was part of the Vessel, or was not covered by the insurance policy. These are issues of fact best resolved at summary judgment or trial.

PAE only raises this issue on its own behalf, claiming that

9

it does not stand in the same position as the other Defendants because PAE had a contractual relationship with Markel's insured. Tort Reply at 3. The Court's ruling applies equally to the tort claims as asserted against Leviton and Hubbell, however, as East River protects component manufacturers from tort liability in the same way it protects the vessel manufacturer. See East River, 476 U.S. at 867; Saratoga Fishing, 520 U.S. at 883-84.

### 2. Adequacy of Markel's Allegations

Hubbell argues that Markel has not alleged facts sufficient to support any of its claims. See Venue Mot. at 4-5. PAE makes the same argument with respect to the breach of warranty claim. See Tort Mot. at 5-6. In essence, Defendants argue that the Complaint is filled with nothing more than boilerplate allegations reciting the elements of each claim, without actually alleging facts necessary to support those claims.

Markel claims that its allegations "provide sufficient factually specific information to permit each defendant to assess its potential liability and to respond to the complaint." Tort Opp'n at 3; see also Venue Opp'n at 2-3. Markel also argues that Defendants are aware of their own business records detailing their sales and manufacturing, so it should not need to allege those details in its Complaint. See Tort Opp'n at 3; Venue Opp'n at 3.

The allegations in each claim in the Complaint are inadequate. For each claim, Markel alleges, at most, the basic elements of the cause of action. At no point in the Complaint does Markel identify which Defendant did what, or which products are alleged to have been defective.

10

The breach of warranty claim is illustrative. Markel asserts in the Complaint that all three named Defendants "expressly and impliedly represented and warranted that the product(s), services and materials provided would be of good quality and workmanship, free from defects, were of merchantable quality fit for the particular use intended and would conform to the standards of products of that nature." Compl. ¶ 23. Markel then claims that "the vessel and component parts designed, manufactured, sold and distributed by defendants, and each of them, were, in fact, dangerous, defective and failed to be of the quality represented and warranted by defendants, and each of them." Id. ¶ 25.

Markel claims that there is no case requiring more specific allegations for a warranty claim. The Supreme Court has made clear, however, that merely reciting the elements of any claim will not satisfy the requirements of Rule 12(b)(6):

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Bell Atl., 127 S. Ct. at 1964-65 (internal citations omitted). At most, Markel has recited the elements of the claim. In doing so, it has left out such facts as the form of the warranty, the terms of the warranty, which product or products are alleged to have been covered by the warranty, and which actions constituted a breach of warranty.

The other claims suffer from the same lack of detail — Markel does not identify which product or products are alleged to have

11

been defective, what the defect is, who sold each product to PAE or to Markel's insured, or who installed the allegedly defective parts on the Vessel. Even under the liberal pleading standards of Federal Rule of Civil Procedure 8(a), Markel's allegations are simply insufficient. See, e.g., Provencio v. Armour Holdings, Inc., No. 07-0651, 2007 U.S. Dist. LEXIS 70831, at *6 (E.D. Cal. Sept. 25, 2007) (holding that the complaint fell short of the Bell Atlantic requirements, in part because "Plaintiff does not, for example, allege how or why the product was allegedly defective, nor does he allege how or why the product was negligently designed and manufactured."). Without more detail, none of the Defendants can even begin to prepare a defense.

In amending its Complaint, Markel must address these deficiencies and allege the necessary facts with sufficient detail for Defendants to respond in a meaningful way. That Defendants may or may not have relevant business records containing useful information about the products and Vessel in question does not release Markel from its obligation to state the necessary facts in its pleading.

**V.   CONCLUSION**

For the reasons set forth above, the Court finds that venue is proper in this district, but that Markel has failed to state a claim for which relief can be granted. The Court therefore GRANTS IN PART AND DENIES IN PART Hubbell's Venue Motion, GRANTS IN PART AND DENIES IN PART PAE's Tort Motion, and ORDERS as follows:

    1.   All claims in the Complaint are dismissed without

12

prejudice.

2. Markel may file an amended pleading to correct the deficiencies identified herein no later than 30 days from the date of this Order.

IT IS SO ORDERED.

Dated: July 28, 2008

                                                        /s/ Samuel Conti
                                      UNITED STATES DISTRICT JUDGE

13